**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **Comcast of Massachusetts I, Inc.**     ) | Case No.: **05-cv-10687 MLW** |
| ) | |
| Plaintiff,     ) | |
| ) | **PLAINTIFF'S MOTION FOR** |
| vs.     ) | **DEFAULT JUDGMENT** |
| ) | |
| **Lynne Nutton**     ) | |
| ) | |
| Defendant     ) | |

Plaintiff hereby moves this Court for a Judgment by Default against the Defendant in the above-entitled action. The Plaintiff also requests that this Court assess non-liquidated damages, after considering the Plaintiff's filings, including the Affidavit of Comcast's employee, made herewith. The Plaintiff contends that the court may be able to assess non-liquidated damages in this action based upon the facts as determined through the Defendant's default and any facts set forth in the Plaintiff's employee's Affidavit, all in accordance with Fed. R. Civ. P. 55(b)(2). However, should this Court determine that testimony is necessary or even helpful for the assessment of non-liquidated damages, the Plaintiff requests that such a hearing be scheduled.

In support of this Motion, Plaintiff submits:

1. That a Default was entered against the Defendant on September 16, 2005.

2. That the Defendant has still failed to reply or otherwise defend the claims set forth in Plaintiff's Complaint;

3. That the Defendant is not an infant or incompetent;

4. That the Defendant is not in the military service; and,

5. That the Plaintiff is entitled to damages and other civil remedies as set forth below.

In further support of this Motion, please see:

1. Memorandum of Law in Support of Plaintiff's Motion for Default Judgment.

2. Affidavit of Attorney John M. McLaughlin.

3. Affidavit of Mark Mondalto, an employee of Comcast

4. Proposed Order of Default.

**WHEREFORE** Plaintiff respectfully requests that this Court enter Default Judgment in favor of the Plaintiff and against the Defendant for the following:

Pursuant to all of the above, the Plaintiff is entitled to a Default Judgment as follows:

1. Statutory damages $6,000.00 for the violations of 47 U.S.C. § 553(a) pursuant to Title 47 U.S.C. § 553(c)(3)(A)(ii) and/or Title 47 U.S.C. § 553(c)(3)(B);

2. Costs $298.90 pursuant to 47 U.S.C. 553(c)(2)(C);

3. The issuance of a permanent injunction pursuant to 47 U.S.C. § 553 (c)(2)(A) utilizing the following language or language of a similar nature:

   The Court hereby enjoins the Defendant, the Defendant's respective agents, servants, employees, and any person or entity controlled directly or indirectly by the Defendant or acting on the Defendant's behalf from the further modification and/or use of electronic equipment designed for the unauthorized interception of signals in violation of provisions of Title 47;

4. Post-Judgment interest running on the judgment pursuant to 26 U.S.C. § 1961; and,

5. Attorney's fees of $1,140.00 pursuant to Title 47 U.S.C. 553(c)(2)(C).

                                      Respectfully Submitted for the Plaintiff,
                                      Comcast of Southern New England, Inc.
                                      By Its Attorney,

1/3/2006                          /s/ John M. McLaughlin
Date                              John M. McLaughlin
                                    **Green Miles Lipton & Fitz-Gibbon LLP**
                                    77 Pleasant Street
                                    P.O. Box 210
                                    Northampton, MA 01061
                                    Telephone:  (413) 586-0865
                                    BBO No. 556328

Case 1:05-cv-10687-MLW    Document 12    Filed 01/03/2006    Page 3 of 4

## CERTIFICATE OF SERVICE

    I, John M. McLaughlin, attorney for the Plaintiff, hereby certify that on the 3rd day of January 2006, a copy of the foregoing Motion, Memo and affidavits were sent via first class mail to

Lynne Nutton
154 Hampshire Road
Methuen, MA 01844

                                     /s/ John M. McLaughlin
                                     John M. McLaughlin

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **Comcast of Massachusetts I, Inc.**   ) | Case No.: **05-cv-10687-MLW** |
|                                        ) | |
| Plaintiff,                             ) | |
|                                        ) | **AFFIDAVIT OF JOHN M.** |
| vs.                                    ) | **MCLAUGHLIN, ESQ. IN SUPPORT OF** |
|                                        ) | **MOTION FOR DEFAULT JUDGMENT** |
| **Lynne Nutton**                       ) | |
|                                        ) | |
| Defendant                              ) | |

Now comes the affiant, and makes this his sworn statement, under the pains and penalties of perjury, of his own personal knowledge.

### GENERAL FACTUAL ASSERTIONS

1. I, John M. McLaughlin, represent the Plaintiff in the above-entitled action.

2. I am a partner at the Law Firm of Green, Miles, Lipton, & Fitz-Gibbon LLP.

### FACTUAL ASSERTIONS AS TO ATTORNEY'S FEES

3. My usual hourly rate is $200.00 per hour. This rate is more than reasonable for telecommunication civil litigation specialists.

4. I am a member of the Federal Communications Bar Association and I have been heavily involved in telecommunications litigation since the early 1990's. I have represented Comcast, ATTB, Cox, DirecTV and numerous MediaOne and/or Continental Cablevision corporate entities in hundreds of cases.

5. The time records have been edited to remove confidential communications with the client. The Plaintiff reserves the right to amend its claim for attorney's fees and costs should Plaintiff's Counsel have to attend a Default Hearing and Plaintiff may also bear certain costs with reference to said hearing. The details of the time records to-date are set forth below. Also, I have already reduced the billable time

Page 1

from the actual time spent on reviewing and sorting my time records to take into account the first circuit case of *Brewster v. Dukakis*, 3 Fed.3d 488, (1st Cir. 1993) which provides that attorney's fees for work on affidavit for fees should be billed at a reduced rate.  The time referenced below includes all of the time claimed for this action.

**ATTORNEY'S HOURS:**

| Date | Description | Hours |
|---|---|---|
| 4/05/05 | Review file and work on Draft of Complaint | .50 |
| 5/25/05 | Review  Draft of Default | .20 |
| 12/13/05 | Review file and work on Draft of Extension | no charge |
| 12/27/05 | Draft Motion and Memorandum and Affidavit | 3.50 |
| 12/27/05 | Finish Draft Motion and Memorandum and Affidavit | 1.50 |

**SUBTOTAL of hours**                                                                         5.70
At $200.00 per hour

**Total Amount**                                                                              **$1,140.00**

Page   2

6.  No attorney's fees have been paid by the Plaintiff in the case at bar because the case is covered by a contingency fee agreement and there has not been and may never be any actual recovery.

### OTHER FACTUAL ASSERTIONS

7.  The Default of the Defendant has been entered for failure to appear in this action.

8.  The undersigned believes the Court can assess statutory damages in this matter without testimony.  Yet, if the court believes testimony is necessary or even helpful, the Plaintiff will fully cooperate and provide fact witnesses and/or expert witnesses if required.

9.  On information and belief, the Defendant is not an infant or an incompetent and the Defendant is not in the military service

Subscribed and sworn to, under the pains and penalties of perjury, this 3rd day of January 2006.

_/s/ John M. McLaughlin _ _____
John M. McLaughlin
**Green Miles Lipton & Fitz-Gibbon LLP**
77 Pleasant Street
P.O. Box 210
Northampton, MA 01060
Telephone: (413) 586-0865
BBO No. 556328

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Comcast of Massachusetts I, Inc.** ) | Case No.: **1:05-cv-10687-MLW** |
| ) | |
| Plaintiff, ) | |
| ) | **AFFIDAVIT OF** |
| vs. ) | **MARK MONDALTO** |
| ) | |
| **Lynne Nutton** ) | |
| ) | |
| Defendant ) | |

Now comes the affiant, and makes this his sworn statement, under the pains and penalties of perjury, of his own personal knowledge.

1. My name is Mark Mondalto.

2. I am employed by Comcast as an Area Piracy Specialist. I also worked in a similar position for Comcast's predecessor in interest.

3. In the interests of simplicity, throughout this affidavit I will refer to Comcast of Massachusetts I, Inc. and/or its predecessor in interest as "Comcast".

4. I am familiar with and I have reviewed the business records of Comcast associated with the Defendant, Lynne Nutton.

5. I have been trained by Comcast and I have been in my position or a similar position to this for a number of years. Through this training and experience I have become familiar with:

    a. Comcast's encryption and security system;

    b. Unauthorized methods of descrambling Comcast's scrambled signals;

    c. Black market devices to enable unauthorized descrambling; and

    d. The methodology of testing Comcast's own converters/descramblers to determine if such devices have been covertly modified to receive unauthorized interception of signals.

Page 1

6. In order to protect its signals and maintain the value of its services, Comcast encrypted and/or scrambled, in an analog fashion, some of its signals so that the signals would have to have first been decoded by electronic decoding equipment in order to be viewed clearly on a television receiver. Take note that throughout this affidavit I am referring to analog scrambling and descrambling as that was the predominant method of scrambling used at the time pertinent this case. Today most scrambling is done in a digital manner.

7. Comcast utilized analog encryption to encrypt and/or scramble signals for premium channels, such as HBO, Showtime, and Cinemax, for which subscribers would have paid a separate monthly subscription fee, and for pay-per-view events, such as a pay-per-view movies, adult pay-per-view offerings and special event pay-per-view offerings, for which subscribers would have paid a specific one time charge to view each pay-per-view signal.

8. Comcast issued/leased to most of its subscribers a device called an analog "addressable converter/descrambler". These devices converted signals for older televisions that were not "cable ready" and they descrambled analog signals based upon the instructions that the cable company sends to the addressable converter/descrambler. The crucial element of the addressable converter/descrambler was that it was "addressable". That meant the cable company could "address" (give instructions to) the descrambler. "Addressability" refers to the descrambler's ability to descramble signals based *only* upon the instructions that it receives from the cable company.

9. Unfortunately, it was also possible to modify or have some third party modify an addressable converter/descrambler to covertly create a non-addressable coaxial cable analog descrambler. Such a modification was often called "chipping" a box. Chipping a box is where an individual places certain electronic equipment, often called "chips", inside the electronic circuitry of a legitimate, addressable converter/descrambler to modify the device in such a way that it then becomes a non-addressable descrambling device. The modified converter/descrambler could then not be addressed with instructions; instead it would simply descramble Comcast's scrambled signals without any instructions from Comcast.

10. Please realize that an individual in possession of a modified ("chipped") converter/descrambler or other unauthorized descrambling device would still need to purchase some cable television signals from Comcast in order to allow the scrambled signals to enter the home and thereafter be covertly descrambled.

11. Additionally, the non-premium cable television stations (e.g. MTV, The History Channel, etc.) are offered to subscribers in groupings of channels ("tiers"). These channels are either delivered in groups to the subscriber in a non-scrambled fashion or they are simply not delivered into the home at all. This also explains why an individual with a descrambling device might still be paying a significant amount to the cable television company while utilizing a descrambler to descramble the premium channels. If an individual with an unauthorized de-scrambling device, such as a modified ("chipped") converter/descrambler, wanted access to *all* stations, that individual would still have to pay to have all the non-scrambled stations to come into the home. The Individual could then use the

modified ("chipped") converter/descrambler to descramble the premium stations and pay-per-view signals.

12. Two particular converters/descramblers, bearing serial numbers BF49ACHLF and BF49ABXLV, were issued by Comcast to the Defendant on or about August 15, 1994.

13. Converter/descrambler BF49ACHLF was returned to Comcast by the Defendant on April 30, 2002.

14. Converter/descrambler BF49ABXLV was returned to Comcast by the Defendant on May 16, 2002.

15. Shortly after Converters/descramblers BF49ACHLF and BF49ABXLV (hereinafter the "devices") were returned to the Plaintiff, I tested and examined both of the Converters/descramblers.

16. My testing evidenced the fact that both of these devices had been electronically modified ("chipped") while in the possession of the Defendant so as to allow for the unauthorized descrambling of the Comcast's scrambled signals; this would allow for authorized reception of secured cable system programming including premium channels and pay per view offerings.

17. I do not know of any forensic method that can tell us precisely when these Converters/descramblers were modified while in possession of the Defendant. Usually the date of modification is inferred from the account history of the Defendant.

18. The Defendant's account history reveals that while the Defendant was in possession of the subject converters/descramblers, the Defendant purchased tiered

programming but the Defendant did not purchase any premium channels or any pay-per-view signals. The purchase of tiered programming enabled the Defendant to obtain the tiered (non-scrambled) programming that the Defendant apparently wished to receive and it brought the scrambled signals into the home.

19. Occasionally a modified ("chipped") converter/descrambler is removed out of the account of an individual and there is a suspicious "bright line" in that individual's account that would lead to the inference of the date of modification. For example, there might be a day where that individual downgraded or dropped premium channels. This is evidence that the individual modified the converter/descrambler on or about that particular date. However, more frequently, the suspect individual's account does not have such a "bright line". Most suspect individuals have account histories, like this Defendant's account history, that reveal that the suspect individual only purchased standard, non-premium service while in possession of the subject converters/descramblers and she did not ever order premium channels or pay-per-view signals while in possession of the device.

20. Based upon the fact that the Defendant never order premium channels or pay-per-view signals while in possession of the subject converters/descramblers, and absent other evidence, such as verifiable information from or about the Defendant, it is reasonable to infer that the devices were modified sometime soon after they went into the home on August 15, 1994 and they were utilized to obtain unauthorized interception of premium channels and pay per view signals until the devices were returned to the Plaintiff on April 30, 2002 and May 16, 2002. Accordingly, it is clearly possible that the duration of the unauthorized

interception could be as high as approximately 92 months. I shall hereinafter refer to this 92 month period as the "pertinent time period".

21. During the pertinent time period, through the use of the unauthorized descrambling devices, namely the modified ("chipped") converters/descramblers, the Defendant would have had access to scrambled premium channels and scrambled pay-per-view signals while only paying for a level of tiered, non-scrambled programming.

22. While the charges for and numbers of the premium channels that would have been available to the Defendant through the use of the device varied significantly during the pertinent time period, taking into account the length of time and the variations in price it is reasonable to state that estimated price for the premium channels covertly available to the Defendant were *on average* was $65.00 per month. This $65.00 figure represents the value of the premium channels the Defendant had access to over and above the tiered, non-scrambled non premium stations the Defendant was actually paying for.

23. During the pertinent time period, the charge for and the number of pay per view movies, adult pay per view offerings, and special event pay per view offerings (e.g.; boxing or wrestling match) that were accessible to the Defendant through the use of the device varied significantly but taking into account the length of time and the variations in price it is reasonable to state that an estimated price *on average* was:

   a. $3.95 per pay-per-view movie and there were numerous movies offered per month;

      b. $8.00 per adult pay-per-view offerings and there were numerous offerings per month;

c. $30.00 per special event and, on average there was at least one special event per month

24. Also of assistance in calculating the amount of unauthorized interception is the fact that Comcast did a detailed analysis of its legitimate, paying subscribers in a similar New England franchise as to their pay-per-view purchasing in the month of February, 2003. This analysis showed that a statistically significant number (.17%) of its legitimate, paying, high-end purchasers purchased fourteen (14) or more pay-per-view movies during that particular month.

25. If legitimate, high end, paying subscribers of Comcast purchase fourteen or more pay-per-view movies in a given month it can be inferred that individuals like the Defendant, utilizing a descrambler without any concern for costs, would also view at least as many pay-per-view movies as the legitimate high end paying subscribers of Comcast. It can also be inferred that that individuals like the Defendant, utilizing a descrambler without any concern for costs, would make a significant number of purchases of the more expensive adult offerings in addition to or in lieu of the less expensive pay-per-view movies.

Subscribed and sworn to, under the pains and penalties of perjury, this 19th day of December, 2005.

_[signature]_
Mark Mondalto

**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **Comcast of Massachusetts I, Inc.** )<br>    Plaintiff,    )<br>                              )<br>vs.                           )<br>                              )<br>**Lynne Nutton**              )<br>                              )<br>    Defendant                 )<br>_____ ) | | Case No.: **05-cv-10687-MLW**<br><br>**ORDER OF<br>DEFAULT JUDGMENT** |

The Court, having considered the Plaintiff's Motion for Default Judgment and the accompanying documentation filed with said motion, finds that the Plaintiff is entitled to a Default Judgment as follows:

1. $_____ in statutory damages pursuant to Title 47 U.S.C. § 553(c)(3)(A)(ii) and/or Title 47 U.S.C. § 553(c)(3)(B); for the violation of 47 U.S.C. § 553(a);

2. Costs $_____ pursuant to 47 U.S.C. 553(c)(2)(C);

3. The issuance of a permanent injunction pursuant to 47 U.S.C. § 553 (c)(2)(A), as follows:

    "The Court hereby enjoins the Defendant, the Defendant's respective agents, servants, employees, and any person or entity controlled directly or indirectly by the Defendant or acting on the Defendant's behalf from the further modification and/or use of electronic equipment designed for the unauthorized interception of signal in accordance with Title 47; and

4. Post-Judgment interest running on the judgment pursuant to 26 U.S.C. § 1961;

5. Attorney's fees of $_____ pursuant to Title 47 U.S.C. 553(c)(2)(C).

**SO ORDERED**.

Dated: _____          _____
                                   United States District Court Judge